The next case is A.F.G.E. Local 1923 v. Social Security Administration, 2018-2394, Mr. Galeotto. Thank you, Your Honor. Good morning, if it pleases the Court. If I might draw the Court's attention very briefly to some essential facts. First of all, the allegation against Ms. Ragsdale who was present this morning was that on 15 separate occasions, in order to obtain leave, she submitted altered medical documentation. The first thing that needs to be considered is that in 11 of those 15 instances, she was not required to have medical documentation. Excuse me, what? Not required to have medical documentation pursuant to the collective bargaining agreement. To make a very long story short, if you're absent three days or less, you don't need the documentation. Additionally, 14 out of those 15 times at the arbitration hearing. The charge wasn't that she failed to file a form that was required. I'm sorry? The charge wasn't she wasn't being punished for failure to file a form that was required. Correct. Right? She was charged with falsification. Yes, I prefer to use the word altering. Are you saying it's okay to falsify a document that isn't required? No, what I'm saying is that if you look at the context, the severity is much less than the agency purported it to be, and as the arbitrator found. If you boil this down to the essence, what we presented at the arbitration hearing was comparative evidence of people whose offenses were more severe than hers who were not fired. She was fired. The most egregious comparison is an individual who was a three-time offender who had been suspended for seven days for the first violation, 15 days the second time, and then on the third offense was only suspended for 45 days. Well, the arbitrator found that cases cited by the union involved misconduct that was not nearly as weighty or as severe as the grievance misconduct. There was also a lack of candor involved here. There was lack of candor in the case I just mentioned, Your Honor. The arbitrator's finding is not supported by the facts. That's, to me, very clear. He did say that. What the agency posed to contradict what we posed were cases where people actually were supposedly fired, although in the brief they conceded that one of those three was not. The human relations or the human resources witness for the agency said, the reason we fired those people and didn't fire the people that we alleged were the appropriate comparators was because those people didn't enjoy a financial gain. They didn't gain a benefit. Correct. And our contention has been, and I think it's absolutely supported by the evidence, overwhelmingly so, that Ms. Ragsdale enjoyed no financial benefit. She was entitled to the leave. Is the benefit only financial? Yes. If I understood the testimony correctly of the HR witness. Why don't you show me the point in the record? Well, it's page 19 of the agency's brief. I don't have the appendix reference. Well, don't you have to show me the testimony you're talking about? Well, yes. So the explanation was, basically, from the agency, was we terminated the people where, as a result of their false statements, they got some benefit. Yes, and one of them obtained a work-at-home benefit, and another one obtained what they termed voluntary leave transfer benefit. Okay, a work-at-home benefit means that you can work at home, right? Correct, telework. Okay. So that's a benefit that's non-monetary. Well, I guess I'd have to concede that it's non-monetary, although there's an ancillary monetary benefit and a saving to the employee who can work from home. So someone who is able to stay at home without any penalty doesn't get knocked with AWOL, right? It depends whether they're actually working. Well, this record is shot through with people who, in addition to making false statements, were AWOLs, so AWOL is a serious penalty. No, AWOL is actually not disciplinary, Your Honor. That's in the regulations from the agency. Can't you change and be removed for AWOL? No, there can be, but it has to be found that the absence without leave results in some other problem, in a failure to perform or something of that sort. But AWOL itself is universally recognized as not in and of itself a disciplinary matter. I think that the key here is that the burden is on the agency to show that if an employee is treated differently, then somebody who we allege has been treated more favorably for the same or more egregious offense. It's the agency's burden to establish why there's a difference, and the evidence of that is extremely weak. It is a single statement by the HR witness that these other folks enjoyed a financial benefit. I repeat myself when I say Ms. Ragsdale enjoyed no financial benefit. The other people you're talking about you cite in your brief, but you don't point us in the record to the actual evidence as to those individuals. As to our competitors or to their competitors, Your Honor? I'm not sure I understood the question. Because we did with our competitors, the comparators, we did. We have in the record three examples in the appendix of the three main people that were supposed, pardon me, the arbitrators said were removed, right? There were three, but in their brief, they concede one of them was not removed. Well, the three actually, two were not removed. Yes. One was allowed to quit, right? I think there was a different... One was allowed to quit. The other one was given a last-ditch settlement. Those are the three main ones. But in order to meet their burden, I think they have to do more than say... My point is that we have in the record the actual documents with regard to F7, F4, and F1. Those are the agency comparators. It's the record. You can see exactly what the nature of the charges were. The two that you're relying on in your brief, we don't have that. The two in your brief, which were... I can't remember which Fs they were. We don't have those documents. You didn't put them in the record. I think they're referred to... Well, my error, if that... And I don't doubt that the court has properly determined that, but that was certainly not my intent. If you look at the deposition, excuse me, the arbitration transcript, those comparators are discussed there. The agency hasn't... Not discussed in any detail at all. But the agency hasn't challenged what we've said about those comparators. So what's the rule here in terms of the Douglas factors? Suppose the agencies, it seems to me, can't be consistent across the board in the way they treat people. It's just expecting too much. What is the rule? When does it become improper for the agency to treat similarly situated people differently? It can't be that any difference is sufficient. When they can't meet the burden of showing that there is a reason for imposing a more severe penalty on someone whose offense is... So if there's one person who's in the same position who's been treated differently, that's enough, even though there are several others who were treated the same way? I don't concede that anybody was treated the same way because... Let's assume that there are... Let's assume that we have six people who were in the same circumstances, that the agency treated five of them the same way but treated one better than the employee who's on appeal. I don't know if there's a bright line. I don't know if there's a bright line. I think that you have to look at it from the perspective of why is the agency treating somebody who was entitled to take leave 11 of the 15 times? Is that a valid evidence? There are agencies that can't always be consistent, right? There are going to be situations... But they can't be marked? They can't always be consistent. They may make mistakes, they may treat one person differently, but don't we have to look to see whether there's a pattern of treating other people differently than the petitioner in this case? I'm not aware of any case law that says there has to be a pattern. What does the case law say? What's the governing case? The agency has to... What's the governing case? On the burden? Yeah. I'm sorry. I'm sure I put it in the brief but I can't recall it off the top of my head. If you don't have it, you can come back with it on rebuttal. I do have it. It's Lewis v. Department of Veterans Affairs signing Woody v. General Services Administration and... I'm not sure I'm pronouncing this correctly. Becky v. Department of Homeland Security. Those are all cases. Two of those cases are decided as recently as 2010 and they're all MSPB cases. What do they say? They say that it's the agency's burden to show why they're treating somebody more harshly than a comparator. See, I think... And the government said here that in the first place they thought your case was more egregious. Right? The arbitrator said that. He did say that and he's absolutely wrong. I mean, look at the first comparator we talked about. The first comparator we talked about was a three-time offender. Which one is it? Where in the brief? Show me in the appendix. Okay. The appendix is page 56. There's no details about that. Right? Well, it refers to various exhibits. We had stipulated a series of exhibits. F1 through 8 or 9, right? That's correct. Which F was this you're talking about? This looks like... Let me make sure I'm reading the correct one. It appears to be F7. F7. Okay. I think I got that right. F7? F7 had four false locations. No. Was charged with lack of candor. Had a seven-day suspension, a 15-day suspension. And then on the third... Was proposed for removal and then resigned the day before she was fired. No. That person got a 45-day suspension and given a last chance agreement. There's later testimony that that person then later violated the last chance. But the point of comparison is... That's F1. That person. I will stand corrected. Yes, I say it is. Yes, it's F1. Yes, I'm sorry. I was wrong when I said F7. I did, sir. I apologize. The three that were actually removal were F7, F4, and F1. And the judge thought all three had been removed. Pardon me. The arbitrator was wrong. One quit before she got thrown out. Before she was removed. And the other one got a last chance settlement agreement. If you get a last chance agreement then you're not fired. So there are only two that they can correct. The one that got the last chance agreement was not charged with lack of candor. So that is not a comparator. I think the court is asking for a bright... You understand that. I understand what your point is. But I think the court is looking for a bright line distinction that doesn't exist and can't exist. I think that this is implied in your question, Judge Dyke. That you have to look at the totality of circumstances. And I think the board was wise when it said rather than have an endless debate try to find this non-existent bright line we'll put the burden on the agency to show why somebody is treated more severely. The HR... I'm repeating myself for the third time. The HR person says  Well, if one was about... Can you show me on the record where they said financial gain? I don't have the appendix reference. I apologize. It's page 19 of the agency brief. It's not in there. Where does the agency brief say? It's in the arbitration transcript where the HR person is testifying to that. I read it. I saw that all they said was you get a benefit, not a financial benefit. The point is, Ms. Ragsdale got no benefit. Of course she got a benefit. She was able to stay home without being charged with ABLE. No. She was entitled... On 11 occasions she didn't have to do anything and on 14 occasions at the arbitration hearing she said, here's my legitimate proof which was never challenged. She didn't have to do anything. She could take the time off because of what? Under the collective bargaining agreement and also the personnel policies of the Social Security Administration. If you're absent three days or less unless you're on leave restriction which she was not, I addressed that in the brief, you do not have to do anything other than call in and say I'm sick. I won't be in today. There are certain details about that procedure. I have a question of her drawing leave from a later period. And that this misrepresentation had some relationship to that. Again, she, under the collective bargaining agreement, as long as she had legitimate illness, she could draw that down and further she has to pay it back. There's various requirements and time limits on paying it back and she complied with all of that. I know my time is up. I just want to... in the record that was given us testimony because the agency got up and said here's the reason why, or at least comparators here are the reasons why the ones we got rid of we removed. The ones we didn't remove because they didn't get a gain. It would seem to me once they make that allegation the burden shifts to you to prove that your client didn't get any gain. And I think that we did. I can't see it. I didn't see any testimony in the record specific testimony to the fact that she wasn't required to get these things. I see that in your brief. And then I didn't see in the record in front of us that she didn't get any gain. It hasn't been challenged by the government and it's in the collective bargaining agreement is what I can say at a minimum. But don't you have to put all that in the record once the government makes a prima facie argument as to why they had extinguished the comparators, put them into two groups. Which sounds like a legitimate basis for putting them into two groups. We take people who didn't get them, we treat them as partial. Ask the court to look at one other thing. The three comparators that we refer to, to the extent that anybody got a gain, financial or otherwise, so did the three comparators that we talked about. So that belies the government's rationale. Counsel, as you've noticed, the time has expired. We'll give you two minutes for rebuttal and let's hear from the government. Thank you. Good morning, Your Honor. May it please the court? Your Honor, this case presents two questions for the court's consideration. First, whether substantial evidence supports the arbitrator's decision that Ms. Ragsdale engaged in lack of candor. And second, whether the penalty of removal from federal service was reasonable. Both questions should be answered in the affirmative. To go directly to the discussion that you were just having with my opponent, if I direct the court's attention to Appendix 290, which is the collective bargaining agreement and is the clause that determines that you need a doctor's note for advanced sick leave. So Ms. Ragsdale did not have sick leave. And so she was taking advanced sick leave. And in the case where you're seeking advanced sick leave, you do need a medical certificate. And that's on page 290 of the appendix. What is advanced sick leave? Advanced sick leave is when you do not have sick leave and the agency grants it to you anyway knowing that you'll come back and pay it back when you return. And so one of the things that's required is a medical certificate that substantiates a serious illness or injury exists, as well as some indication that you will be able to return so that they know you'll pay So were all of her requests for advanced sick leave? There were 290 hours of advanced sick leave that Ms. Ragsdale received. So I'm not 100% sure that all of them, but at least 240, I'm sorry, 240 of the hours that she received were advanced sick leave hours, which would have required medical documentation. So how much of the additional leave she took wasn't for advanced sick leave? There was 111 hours that she took that were leave without pay. And so when we talk about the benefit she received, the testimony we were just talking about is on Appendix 54. And that testimony is that the comparators did not receive a benefit. It doesn't reference a financial benefit. It means a benefit as in the advanced sick leave was considered a benefit for Ms. Ragsdale to which she was not entitled. As well as the leave without pay. So 111 hours of leave without pay and 240 hours of advanced sick leave. That is what the agency considered the benefit to which Ms. Ragsdale was not entitled. What do you understand the standard to be under the MSPB cases where you have this comparator issue? I mean, it strikes me, as I said earlier, that agencies can't be perfect about this. They can't treat everybody exactly the same. It's too complicated. What is the test? Is it a pattern of treating other people differently? What do the cases say about it? I agree with you, Your Honor, that it's difficult. The cases don't have a bright line rule. It is the Douglas factors. They may be a bright line rule, but do they have a test? There is not a test that I'm aware of. The language from the Douglas factors is consistency with others similarly situated. And so the agencies have taken great time and the MSPB has taken the effort of looking at comparable as we did here, looking at people who are similarly situated and trying to make sure that the penalty imposed is consistent. Well, suppose it isn't. Suppose there are instances in which there is inconsistency. What happens then? Well, the Douglas factors are a balancing test. So no one factor weighs heavier than the others. And so what the agencies are able to do is look at all of the various Douglas factors and weigh them. And so the question becomes if there's inconsistency, are there other mitigating factors that you can look at or other Douglas factors that weigh in favor of a penalty or not? And so in this case, in looking at all of the Douglas factors, the agency believed it weighed in favor of removal from its rights there. With respect to the penalty, Your Honor, the three Douglas factors that come up... There's a matter here that the arbitrator got it wrong when he said that the three main comparator cases, all three were removed when only one was removed. Yeah, I don't think it makes a big deal. I think that the arbitrator still did a proper weighing. Those three... How do we know that this arbitrator actually rolled up his sleeves and looked in detail at the specifics of each of the comparators? We have in the documents for F7, F4, and F1. We don't have the documents for the two cases that your adversary cites in his brief. You respond to one of them by saying in one of those, the person didn't get a benefit. You don't have a response to the other of his two that he puts in his blue brief but with no record support. I will say, Your Honor, I also noticed that those were not here. This case was unique in that the arbitrator who normally would submit a certified list to the court and documents for the use completely destroyed everything. So, counsel and I did have to go through and rebuild the record. I am not personally familiar with the two, the details, the specific details of the missing comparables other than the testimony that we have in the record from the agency regarding those comparables. Does the arbitrator understand that he shouldn't be destroying the record? I hope he does. Particularly when this case was appealed and everyone was in touch with him. Federal Rules of Appellate Procedure 17 expressly say that the agency has to keep the record, and in these cases where it comes up to the arbitrator, our practice note says agency means arbitrator. So there was a violation of Practice 17 in this case. The agency did keep the record and submitted the record. It did make it to the appendix. The agency submitted the docket sheet which is all as required under Practice 17. But the agency is required to keep the entire record, meaning the transcript, exhibits, and all that sort of thing. That's what got destroyed here. No, the arbitrator destroyed that. The agency does have those records. What I'm saying is that in building the appendix, counsel and I worked together to build the appendix and those comparables did not make it into the filed appendix as they weren't cited specifically in the governance brief. Does the MSPB have the arbitrator's record? I can't speak to whether the MSPB has the arbitrator's record. The agency, the Social Security Administration, certainly has a record of everything that occurred before the arbitrator. They have the transcript? The transcript of the hearing? Yes, they have the transcript of the hearing. The transcript of the hearing, the relevant portions are included in the appendix. The entire transcript? Yes. We asked for it. The arbitrator didn't have it because he threw it out. The transcript of the hearing? Yes. We could certainly get you the entire transcript of the hearing, Your Honor. Yes. But we were informed as well that the arbitrator threw out everything. Your Honor, we'd be happy to provide that. Anything further? I'm sorry? Anything further? If the court has no further questions of us, Your Honor, we would just ask that and argue that the court should affirm the arbitrator's decision of removal from his rights. Thank you, Ms. Murphy. Mr. Cagliaro has two minutes for rebuttal. Thank you, Your Honor. If I might request that we're going to supplement. My understanding was the whole record is before the court. The appendix is for convenience. And I apologize. I'm astounded to find what's not there. And I'd ask that we supplement the appendix with the transcript and the exhibits concerning the comparators that we've been talking about. It seems that fairness requires that so that the court has a complete record and a complete understanding. Well, it's a little late. I mean, the short of the matter is that if your case is built on the specifics involved in the comparator cases and you had an opportunity to present them to us to review and you didn't do that. Understood, Your Honor, but the arbitrator didn't comply with his responsibility. No, his responsibility is only to supply us with the docket sheet under the rules. I will do whatever  as a matter of fairness, those exhibits should be before the court. They are referred to in the transcript that you do have, and they're discussed in that transcript. If the court doesn't think that's adequate, then I again request that we be allowed to supplement. Let me just say, Your Honor, Judge Dyke, in response to your question, what do you do if the agency has not been consistent? The Mistel case decided by this court discusses that. They vacated the arbitrator's order decision and remanded the case. There are two other obvious factors. What is that case you just referred to? It's the Social Security Administration. It's cited in my brief. I'll give you the full cite right now. It is 863 Fed 3rd. What's the case? Mistel, M-I-S-K-I-L-L v. Social Security Administration 863 Fed 3rd 1373 this court 2017. Let me just briefly mention it's discussed in the brief. There were two other Douglas factors for which one, there was no evidence that a lesser penalty was even considered. That is a Douglas factor that is part of the equation, part of the calculus. In terms of trust, we discussed at length in the brief that Ms. Ragsdale was always a trusted employee, that she was allowed to work from the time the agency first acknowledged that there had been altered records, which was in April until October. The agency says, or the government says in its brief, well, normally people continue on while things are pending, not if they can't be trusted. They're not. If there's an immediate, if there's a true lack of trust that the person can't perform their duties, you stop them then and there. You don't allow them an opportunity to do wrong. I will stop you then and there. Thank you. This is submitted. Thank you for pronouncing my name correctly.